Filed 3/9/22  P. v. Nguyen CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059506 |
| v. | (Super. Ct. No. 05ZF0086) |
| AN QUOC NGUYEN, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed and remanded with directions.

Michael Bacall, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Alan L. Amann, and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In 2005, defendant An Quoc Nguyen was convicted of first degree murder, attempted murder, and two counts of conspiracy to commit murder. Defendant's judgment of conviction was affirmed in *People v. Nguyen* (Mar. 12, 2007, G035886) [nonpub. opn.] (*Nguyen I*). In 2019, defendant petitioned, under the then newly enacted Penal Code section 1170.95,[1] for an order vacating his murder conviction and for resentencing (the petition). He also filed a motion for a *Franklin* proceeding (the *Franklin* motion).[2] After an attorney was appointed for defendant, the trial court summarily denied the petition. Our record does not show that the trial court ruled on the *Franklin* motion.

We affirm the trial court's order summarily denying the petition because defendant failed to make a prima facie showing of his entitlement to relief. Defendant was found guilty of directly aiding and abetting the commission of first degree murder with an intent to kill. The jury was not instructed that it could find defendant guilty of first degree murder based on a theory of felony murder, the natural and probable consequences doctrine, or otherwise based on a theory of indirect aiding and abetting. Defendant was therefore ineligible for resentencing under section 1170.95 as a matter of law. We also remand the matter with directions that the trial court consider the *Franklin* motion.

---

[1] Subsequent statutory references are to the Penal Code.

[2] "Broadly speaking, a *Franklin* proceeding allows youth offenders sentenced to long prison terms an opportunity to introduce into the record mitigating evidence relating to their youth. As explained in the case for which it is named, *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), the purpose of this proceeding is to preserve such evidence for consideration at future parole hearings." (*People v. Howard* (Dec. 22, 2021, G059213) __ Cal.App.5th __ [2021 Cal.App. Lexis 1077, p. *1].)

# I

## FACTS AND PROCEDURAL BACKGROUND

The following facts are taken from *Nguyen I*:

"Defendant belonged to Asian Gang (AG), a criminal street gang. He was hanging out late one night with other AG gang members at a Westminster restaurant. Members of a rival gang, Asian Crip Boys (ACB), approached them. Defendant called out, 'You m . . . f . . . , ACB,' and 'F . . . ACB.' A fight broke out. Defendant punched a rival gang member, chased him while carrying a 'Club' vehicle anti-theft device, and threw the Club at him. The fight eventually ended; defendant left.

"Later that night, sometime before dawn, defendant received a phone call from his friend, another AG gang member. His friend asked defendant to come to his house due to 'an emergency.' His friend's car window had been smashed. Defendant, his friend, and two other AG gang members went looking for the rival gang members they suspected had broken the window. Defendant went to 'back up' the other gang members-i.e., provide support and use their guns in case they got injured. They found the rival gang members driving around Westminster, and followed them.

"The rival gang member's car pulled over on Erin Street in Garden Grove. The driver, an ACB gang member known as 'Cali,' began to get out of the car. As he did, defendant's friend turned off his car's headlights and slowly pulled up alongside Cali's car. Defendant argued with his friend and another AG gang member for the right to shoot at Cali. Defendant yelled in Vietnamese, 'It's them. Shoot them,' 'M . . . f . . . , shoot them for me,' or 'Kill them for me.' He ducked down in the front passenger seat, letting the other gang member shoot at Cali through the front passenger window. The bullet missed Cali, but shattered Cali's driver-side window and passed through the front passenger window. The occupants of the two cars engaged in a car chase and gun battle.

"The next day, defendant went with his friend and other AG gang members to Huntington Beach. Rival gang members pointed a gun at them from a car. The AG

3

gang members drove off to get handguns. Defendant wanted one of the guns, but was not allowed to carry one. Rather, he was 'just like a backup.' Defendant and the other AG gang members went back to Huntington Beach and unsuccessfully searched for the rival gang members. They talked about shooting the rival gang members if they found them.

"Defendant and the other AG gang members discussed setting up an ambush for the rival gang members at the Westminster restaurant. They drove to the restaurant, arranged their cars in strategic locations, hid their guns nearby, and waited.

"When the rival gang members finally drove up to the restaurant, the AG gang members yelled, 'It's them,' 'They're here,' and 'ACB.' Defendant got into a car with other AG gang members. They shot at the rival gang members, and then chased them. The two cars exchanged gunfire during the chase. Defendant asked for a gun so he could shoot at the rival gang members. A bullet shot by someone in defendant's car hit one of the rival gang members in the head, killing 16-year-old The Duy-Nguyen Doan."

Defendant was charged in an indictment with one count of first degree murder (§ 187, subd. (a)), two counts of conspiracy to commit murder (§ 182, subd. (a)(1)), and one count of attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a)). The indictment alleged as a sentencing enhancement that defendant committed the crimes for the benefit of a criminal street gang. (§ 186.22, subd. (b)(1).) It further alleged a principal discharged a firearm in the commission of the crimes. (§ 12022.53, subds. (c), (d), (e)(1).)

A jury found defendant guilty on all counts and also found the sentencing enhancement allegations true. In 2005, the trial court sentenced defendant to a total term of 95 years to life in prison. Defendant appealed from the judgment of conviction, which was affirmed by a panel of this court in *Nguyen I*.

In September 2019, defendant filed the petition in which he sought resentencing under section 1170.95. On the petition's preprinted form, defendant

4

checked boxes declaring that: (1) a pleading had been filed against him "that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) at trial, he was convicted of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine; and (3) he could no longer be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 1999.

Defendant also checked boxes declaring that he had been convicted of first degree felony murder but could no longer be so convicted pursuant to changes made to section 189, effective January 1, 2019, because (1) he was not the actual killer; (2) he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree"; (3) he was neither a major participant in the felony nor did he act with reckless indifference to human life during the course of the felony; and (4) the victim of the murder was not a peace officer.[3]

In addition to the petition, defendant filed the *Franklin* motion in which he sought the opportunity to "preserve a record of mitigating evidence tied to [his] youth for consideration at a future youthful offender parole hearing." The trial court appointed counsel for defendant.

The prosecutor filed a response to the petition, arguing defendant was ineligible for resentencing under section 1170.95. The prosecutor's response did not address the *Franklin* motion.

---

[3] Defendant also checked a box stating "[t]here has been a prior determination by a court or jury that [he] was not a major participant and/or did not act with reckless indifference to human life under Penal Code section 190.2(d). Therefore, [he] is entitled to re-sentencing pursuant to [section] 1170.95(d)(2)." The record does not show that any such determination had been made by the trial court or the jury.

The trial court denied the petition.  Our record does not show the trial court ruled on the *Franklin* motion.  Defendant appealed.[4]

II

DISCUSSION

A. *The Trial Court Did Not Err by Denying the Petition.*

    *1.  Overview of Senate Bill No. 1437 and Standard of Review*

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill No. 1437 "amended sections 188 and 189 and created new section 1170.95.  The amendments to sections 188 and 189 together change the felony murder rules and the 'natural and probable consequences theory' when convicting a participant in a felony for murder, but who did not actually kill the victim." (*In re White*

_____

[4]  In a footnote in his opening brief, defendant requests that this court take judicial notice of the appellate record in *Nguyen I*.  Defendant failed to file a motion as required by California Rules of Court, rule 8.252(a).  But even if defendant had complied with that rule, we deny his request as irrelevant to the resolution of this appeal because (1) the record establishes defendant was convicted of first degree murder on a theory of direct aiding and abetting liability, and (2) we are remanding the matter for the trial court to consider the *Franklin* motion.

6

(2019) 34 Cal.App.5th 933, 937, fn. 2.)[5] As amended, section 189, subdivision (a) defines first degree murder as follows: "*All murder that is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing*, or that is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 287, 288, or 289, or former Section 288a, *or murder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree*." (Italics added.)

As amended and as relevant here, section 189, subdivision (e), states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] . . . [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." Eligible persons can petition to dismiss their prior murder convictions and be resentenced if they were convicted under an accomplice liability theory of murder that is no longer valid. (§ 1170.95.)

Procedurally, there are multiple steps in a petition under section 1170.95. First, the petitioner must include a declaration that states he or she is eligible for relief. (§ 1170.95, subd. (b)(l)(A).) The petition must also include the case number and year of

---

[5]  Effective January 1, 2022, the Legislature passed Senate Bill No. 775 (2020-2021 Reg. Sess.), amending section 1170.95 to include, among other things, murder convictions "under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2.) Senate Bill No. 775 did not amend sections 188 or 189.

conviction, and state whether the petitioner requests the appointment of counsel. (§ 1170.95, subd. (b)(l)(B), (C).)

If the petition complies with these requirements, the court appoints counsel. (§ 1170.95, subd. (b)(3), codifying *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).) The court then evaluates the petition to determine if it makes a prima facie showing that relief is available, and if the court finds a prima facie showing has been made, it issues an order to show cause. (§ 1170.95, subd. (c).) At the prima facie stage, the court may consider the record of conviction to determine if the petitioner qualifies for relief. (*Lewis*, at pp. 970-971.)

Our review from the legal conclusion that section 1170.95 precludes relief is de novo. (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167.)

2. *The Record Shows the Jury Found Defendant Directly Aided and Abetted First Degree Murder with an Intent to Kill.*

Defendant argues that, because the jury was instructed on felony murder and on the natural and probable consequences doctrine, the jury might have found him guilty of first degree murder under one of those theories based on the former law as an indirect aider and abettor, and therefore never determined whether he intended to kill or otherwise acted with malice. Defendant is incorrect. The jury was *not* instructed on first degree murder based on either theory.[6]

Instead, the jury was instructed on first degree murder as follows:

---

[6] In his opening brief, defendant states that "[d]uring closing argument, the prosecutor told the jury that the second theory of first degree murder was 'the felony murder rule.'" Defendant's statement is incorrect. During closing argument, the prosecutor told the jury: "Felony murder rule does not lead to first-degree murder. It only leads to a second-degree murder in this case. There are some other crimes that will lead to first-degree murder. We don't have that in this case. In this case the felony murder rule will result in a second-degree murder conviction." The instructions that were given to the jury are consistent with the prosecutor's statements.

8

"Murder is classified into two degrees.  If you should find the defendant guilty of murder, you must determine and state in your verdict whether you find the murder to be of the first or second degree.  Murder is in the first degree if:

"1.  The murder is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought; or

"2.  The murder is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle when the perpetrator specifically intended to inflict death."

The jury was also instructed on aiding and abetting as follows:  "A person aids and abets the commission or attempted commission of a crime when he or she:

"(1)  *With knowledge of the unlawful purpose* of the perpetrator, *and*

"(2)  With the *intent or purpose of committing or encouraging or facilitating the commission of the crime*, and

"(3) By act or advice aids, promotes, encourages or instigates the commission of the crime.

"A person who aids and abets the commission or attempted commission of a crime need not be present at the scene of the crime.

"Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.

"Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting."  (Italics added.)

In light of the given jury instructions, by having found defendant, who was not the shooter, guilty of first degree murder, at a minimum, the jury found defendant guilty of aiding and abetting first degree murder perpetrated either by a willful, deliberate, and premeditated killing with express malice aforethought, or by means of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle when the perpetrator *specifically intended to inflict death*.

9

By finding defendant to have aided and abetted the commission of first degree murder, the jury necessarily found that defendant, with knowledge of the unlawful purpose of the shooter (e.g., to shoot to kill), and with the *intent or purpose of committing or encouraging or facilitating the commission of the crime* (e.g., to shoot to kill), by *act or advice* aided, promoted, encouraged or instigated the commission of the first degree murder.

Thus, although defendant may not have been the actual killer, the given instructions show the jury necessarily found, in returning a guilty verdict for first degree murder, that defendant had directly aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of first degree murder, with the intent or purpose of doing so, within the meaning of section 189, subdivision (e)(2). "Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 848.) Defendant, therefore, is liable for murder under section 189, subdivision (e), as amended, and therefore ineligible for resentencing under section 1170.95 as a matter of law.[7]

B. *We Remand for the Trial Court to Consider the* Franklin *Motion.*

In addition to the petition seeking resentencing, defendant filed the *Franklin* motion. "The purpose of a *Franklin* proceeding is to preserve mitigating evidence relating to an offender's youth for future parole hearings." (*People v. Howard, supra*, 2021 Cal.App. Lexis 1077 at p. *10.) Although typically more effective when

---

[7] In the reply brief, defendant points out that, effective January 1, 2022, section 1170.95, subdivision (c) has been amended to require the trial court to state its reasons for declining to issue an order to show cause at the prima facie stage. Even if this amendment applies retroactively, any error on the part of the trial court in failing to state its reasons for summarily denying the petition is harmless because, as discussed *ante*, the record establishes defendant is ineligible for relief as a matter of law.

conducted shortly after conviction, our Supreme Court has indicated a *Franklin* proceeding may be held years later. (*Ibid.*)

The prosecutor did not respond to the *Franklin* motion, and our record does not show the trial court ruled on that motion. In the respondent's brief, the Attorney General agrees defendant is entitled to a *Franklin* proceeding "to permit [him] to make a record of information for any future youth offender parole hearing." We remand for the trial court to consider the *Franklin* motion.

III

DISPOSITION

The order denying the petition under section 1170.95 is affirmed. We remand with directions that the trial court consider the *Franklin* motion.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

SANCHEZ, J.

11